THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of RELYANT GLOBAL, LLC,<br><br>Plaintiff/Petitioner,<br><br>vs.<br><br>GRANITE-OBAYASHI, a Joint Venture, GRANITE CONSTRUCTION COMPANY GUAM, OBAYASHI CORPORATION, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, THE CONTINENTAL INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF AMERICA,<br><br>Defendants/Respondents. | CIVIL CASE NO. 25-00032<br><br><br>**DECISION & ORDER<br>GRANTING THE MOTION TO DISMISS<br>MILLER ACT CLAIM** |

Before the court is a Motion to Dismiss the Miller Act Claim brought by five surety bond companies, Defendants Travelers Casualty and Surety Company of America, Continental Insurance Company, Federal Insurance Company, Zurich America Insurance Company, and Safeco Insurance Company of America's (collectively, the "Miller Act Defendants"). ECF No. 16. The court has reviewed the record and the relevant case law, and deems this matter suitable

for submission without oral argument. For the reasons stated below, the court hereby **GRANTS** the Miller Act Defendants' Motion.

I.      BACKGROUND[1]

On August 17, 2017, Defendant/Respondent Granite-Obayashi, a Joint Venture, ("GOJV"), entered into a contract with the Naval Facilities and Engineering Command Pacific (the "Government") to perform work on the J-001B Finegayan Utilities and Site Improvements Phase I project (the "Project") located in Guam. ECF No. 9, at 4 (Contract Number N62742-17-C-1324, the "Prime Contract"); ECF No. 17, at 38. The terms of the Prime Contract and the Miller Act required GOJV to acquire a payment bond "for the benefit of subcontractors and material suppliers." *Id.* at 4-5. The Miller Act Defendants, as sureties, issued a payment bond for the Project, with GOJV as the principal. *Id.* at 4-5; 13-14.

On October 1, 2020, Plaintiff/Petitioner Relyant Global, LLC, ("Relyant"), entered into a contract with GOJV to perform munitions and explosives of concern clearance services, write two after-action reports, and complete other tasks for the Project.[2] *See id.* at 5, 31 (Subcontract No. 08.0040, the "Subcontract"). Relyant performed fieldwork, munitions and explosives clearance services, and construction support services from November 13, 2020 to November 4, 2022, and from March 20, 2023 to May 4, 2023. *Id.* at 5. In May and October of 2023, Relyant submitted its two after-action reports to GOJV for approval. *Id.* at 5-6; ECF No. 17, at 8 n.8, 14-33; ECF No. 24, at 7. Relyant alleges that "the after-action reports have not yet been approved by the Government" and that the "Government will require Relyant to make revisions to the after-action reports before they are accepted[.]" *Id.* at 6.

Since then, GOJV has failed to pay Relyant for Invoice # 20147-26 and two Requests for

---

[1] The court refers to CM/ECF pagination throughout this Decision and Order.

[2] The Subcontract stipulated that "performance of the Work is subject to approval and acceptance of Client [the government] to the extent required by the Contract." ECF No. 9, at 16.

Equitable Adjustment ("REAs") based on the additional labor and materials that Relyant provided in its performance of the Subcontract. *Id.* at 6-7. GOJV, instead, reached a Settlement and Contract Closeout Agreement with the Government in "full satisfaction" of Relyant's REAs, which Relyant alleges was "a substantially reduced amount" for what it was owed for the REAs. *See id.* at 7; ECF No. 17, at 5. Relyant further alleges that GOJV has not even paid it that reduced figure from the settlement agreement and that GOJV still owes it $2,682,962.13 for Invoice # 20147-26 and the two REAs. *Id.* at 7-8.

On May 15, 2024, Relyant sent a Notice of Intent to Demand Arbitration to GOJV, but the parties were unable to reach an agreement. *Id.* at 8. Relyant then filed for arbitration, and, after a merits hearing, the arbitrator awarded Relyant $2,682,962.13 with 6% interest and arbitration costs. *See id.* at 8-9.

On July 18, 2025, Relyant filed its initial complaint in this court alleging a sole claim for payment of bond under the Miller Act.[3] ECF No. 2, at 7-8. A month later, on August 18, 2025, the Miller Act Defendants filed a motion to dismiss the then singular Miller Act claim.[4] *See* ECF Nos. 6 & 7 (moving to dismiss Relyant's claim based on the statute of limitations and on the rule against double recovery). On September 2, 2025, Relyant filed the First Amended Complaint and Petition to Confirm Arbitration Award and for Entry of Judgment in which they added a claim for confirmation of arbitration award to its initial complaint. ECF No. 9, at 9. Now before the court is the Miler Act Defendants' second motion to dismiss pursuant to Rule 12(b)(6) – again focusing solely on the Miller Act claim, Relyant's Response in Opposition, and the Miller Act Defendants' Reply. ECF Nos. 16, 17, 24, 26.

---

[3] Plaintiff/Petitioner Relyant originally filed its complaint in the Eastern District of Tennessee on November 25, 2024, but "voluntarily dismissed" it after the Miller Act Defendants raised the issue of venue. ECF No. 24, at 4.

[4] The Miller Act Defendants first motion to dismiss was mooted by Plaintiff's subsequent amended complaint.

## II.    JURISDICTION AND VENUE

Relyant's claims for confirmation of arbitration award and payment of bond under the Miller Act are properly within this court's subject matter jurisdiction. *See* 9 U.S.C. § 2; 40 U.S.C. § 3131 *et seq.*; 28 U.S.C. § 1352; 28 U.S.C. 1331. Venue is proper in this court because a substantial part of the events described in Relyant's First Amended Complaint occurred on Guam. *See* 28 U.S.C. § 1391(b)(1).

## III.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court can dismiss a claim under Rule 12(b)(6) "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Fliger*, 821 F.Supp.3d 1203, 1215 (E.D. Cal. 2026) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)) (internal quotation marks omitted). For the purposes of a rule 12(b)(6) motion, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth." *Alimena v. Vericrest Financial, Inc.*, 964 F.Supp.2d 1200, 1209 (E.D. Cal. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A claim may be dismissed if "it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)); *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013). "[A] complaint cannot be dismissed

unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995).

IV.    **DISCUSSION**

The Miller Act Defendants outline two arguments for why Relyant's Miller Act claim should be dismissed. *See* ECF No. 17, at 6-12. First, the claim is time-barred by the Miller Act's statute of limitations.[5] *See id.* at 6-10. Second, Relyant's Miller Act claim is an impermissible attempt to receive "double recovery for the same claims in violation of the 'one satisfaction rule.'" *Id.* at 11. As the court finds that the statute of limitations bars the Miller Act claim, the court focuses its discussion on the Miller Act Defendants' first argument.

The Miller Act Defendants argue that the Miller Act claim was time-barred for three different reasons when Relyant filed its initial complaint in this court on July 18, 2025. ECF No. 17, at 6-10. First, any revisions to the after-action reports would not constitute labor or materials under the Miller Act,[6] and, as a result, they would not toll the Miller Act's statute of limitations.[7] *See id.* at 7-8. Second, they argue that contrary to Relyant's allegations in the First Amended Complaint, the Government is not going to request revisions to the after-action reports based on the terms of the Subcontract and the settlement agreement between GOJV and the Government. *Id.* at 8-9. Third, "Relyant should be estopped from now asserting that its scope of work is not complete based on its contrary representations in the Arbitration Demand." *Id.* at 10. For these

---

[5] To analyze the Miller Act Defendants' first argument, the court must look at the material factual allegations from the First Amended Complaint and determine if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc.*, 68 F.3d at 1207.

[6] The Miller Act Defendants compare revisions of the after-action reports to on-site field measurements, final inventories of a job site, and administrative or clerical work which are not considered labor under caselaw for the Miller Act. *See* ECF No. 17, at 7-8.

[7] The Miller Act Defendants conceded in their Reply that the original two after-action reports were materials under the Miller Act. ECF No. 26, at 4. Nevertheless, they note that it is undisputed that the first after-action report was submitted to GOJV in May of 2023 and that the second was submitted to GOJV in October of 2023. *See id.* This means that the statute of limitations still would have been expired by July 18, 2025.

reasons, the Miller Act Defendants contend the Miller Act claim is now time-barred.

Relyant counters that its Miller Act claim should not be time-barred as the "scope of work on the Project is not yet complete because of outstanding after-action reports comprehensively detailing [its] work on the Project that have not been fully accepted by the Government." ECF No. 24, at 3. For Relyant, the statute of limitations has not yet started to accrue because the Government could still request revisions to the after-action reports which they argue would be labor and materials under the Miller Act.[8] Relyant then argues that its "allegations are entitled to be taken as true for purposes of the Motion to Dismiss"[9] and it disputes the Miller Act Defendants' estoppel argument because Relyant was "simply repeat[ing] back to GOJV what it has been told by GOJV." *Id.* at 7, 9. Accordingly, Relyant asserts that the statute of limitations does not preclude its Miller Act claim.

## A. THE STATUTE OF LIMITATIONS IN THE MILLER ACT

The Miller Act "provides a supplier of labor or material who has not been paid in full a right of action to sue on the payment bond."[10] *U.S. for Use and Benefit of Interstate Mech. Contractors, Inc. v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 459 (6th Cir. 2000). Congress enacted the Miller Act "to protect suppliers of materials and labor for federal projects, and courts must construe it liberally to effect this purpose." *U.S. for Use and Benefit of Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters., Ltd.*, 74 F.3d 972, 974 (9th Cir. 1996). Regardless "of such a

---

[8] Relyant asserts revisions to the after-action reports would be labor or materials under the Miller Act like the delivery of operation and maintenance manuals and some supervisory work. ECF No. 24, at 5-6. In the alternative, Relyant argues that the question of whether after-action reports are labor or materials under the Miller Act is a question of fact which "cannot be resolved from the pleadings alone." *Id.* at 7.

[9] Relyant contends that the settlement agreement referenced by the Miller Act Defendants in their second motion to dismiss was from outside the pleadings and that even if the court were to consider the settlement agreement, the settlement agreement shows Relyant is subject to ongoing obligations. ECF No. 24, at 7-8.

[10] "[T]he purpose of the payment bond required under the Miller Act is to 'shift the ultimate risk of nonpayment from workmen and suppliers to the surety.'" *U.S. for Use of DDC Interiors, Inc. v. Dawson Constr. Co., Inc.*, 895 F.Supp. 270, 272 (D. Colo. 1995) (quoting *Am. Sur. Co. of New York v. Hinds*, 260 F.2d 366, 368 (10th Cir. 1958)).

salutary policy[,]" courts must follow the "plain words of limitation" in the statute. *U.S. for Use and Benefit of Austin v. W. Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964).

The statute of limitations in the Miller Act requires subcontractors to bring their claim "no later than one year after the day on which the last of the labor was performed or material was supplied[.]"[11] 40 U.S.C. § 3133(b)(4). While "courts have struggled to ascertain the precise date for running the Miller Act's one-year statute of limitations;" the Ninth Circuit has developed a test followed by a majority of the circuits that have addressed this issue. *U.S. for Use and Benefit of Luis A. Cabrera, S.E. v. Sun Eng'g Enters., Inc.*, 817 F.Supp. 1009, 1012-13 (D.P.R. 1993) (citing *Western Electric*, 337 F.2d at 572-73); *see also United States ex rel. Hussmann Corp. v. Fid. & Deposit Co.*, 999 F.Supp. 734, 742-45 (D.N.J. 1998) (discussing the different approaches the circuits have taken to deciding the date the statute of limitations runs for the Miller Act). The Ninth Circuit's test analyzes whether the "work was performed and the material supplied as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." *W. Elec.*, 337 F.2d at 572-73 (internal quotation marks omitted). "[C]orrections or repairs of already-completed work do not reset the clock" for the Miller Act's statute of limitations. *U.S. ex rel. Automatic Elevator Co., Inc. v. Lori Constr.*, 912 F.Supp. 398, 400 (N.D. Ill. 1996) (citing *W. Elec.*, 337 F.2d at 572-73).

In the present case, the Miller Act's statute of limitations expired before Relyant filed its initial complaint on July 18, 2025.[12] First, the statute of limitations requires labor to be performed or materials to be supplied in the year prior to the filing of the Miller Act claim. Relyant does not allege that it performed labor or supplied material any time on or after July 18,

---

[11] For the purposes of Relyant's claim, this means that there must have been labor performed or material supplied since July 18, 2024, for the statute of limitations to not bar Relyant's claim.

[12] The court uses July 18, 2025, as the date Relyant commenced this action because a plaintiff's voluntary dismissal of a lawsuit brought in another venue does not toll a statute of limitations. *See Humphreys v. U.S.*, 272 F.2d 411, 412 (9th Cir. 1959); *see also supra* note 3.

2024, instead Relyant argues that it hypothetically could be required to revise its after-action reports in the future. Second, even if Relyant had revised its after-action reports in that time frame–or even if it is required to do so in the future–revisions of after-action reports would be correction-or-repair labor and materials which do not toll the statute of limitations under the Ninth Circuit's test.

#### 1. Relyant Did Not Allege That it Performed Labor or Supplied Materials in the Year Preceding its Miller Act Claim

The plain language of the Miller Act requires a plaintiff to have performed labor or supplied[13] materials in the year before it filed its complaint. 40 U.S.C. § 3133(b)(4) ("An action brought under this subsection must be brought no later than one year after the day on which the last of the *labor was performed* or *material was supplied* by the person bringing the action.") (emphasis added). Relyant did not allege in its First Amended Complaint that it performed actual labor or supplied actual material anytime on or after July 18, 2024. The First Amended Complaint states that Relyant performed its fieldwork, its munitions and explosives of concern clearance services, and its construction support services by May 4, 2023. ECF No. 9, at 5. And it is undisputed in the briefings that Relyant submitted its two after-action reports to GOJV in May and October of 2023. *See id.* at 5-6; ECF No. 17, at 8 n.8; ECF No. 24, at 7. Thus, the last of the actual labor performed and materials supplied was October of 2023, more than a year before the original complaint was filed on July 18, 2025.

In the alternative to alleging actual performance, Relyant alleged in its First Amended Complaint that "the Government will require Relyant to make revisions to the after-action

---

[13] "In the context of this provision, the Court finds that the plain meaning of 'supply' is to provide or furnish someone with something and to put something into someone's possession for use or consumption." *United States of ex rel. Atlas Copco Compressors LLC v. RWT LLC*, No. 16-00215, 2017 WL 2177968, at *5 (D. Haw. May 17, 2017).

reports before they are accepted"[14] which means "Relyant's cause of action under the Miller Act [had] not yet accrued for statute of limitations purposes." ECF No. 9, at 6. Relyant continued by stating that "[t]his lawsuit was commenced within one year from the date upon which the last of the labor was performed and material and equipment was supplied by Relyant on this Project." *Id.* at 10. Then, Relyant argued that these allegations should "be taken as true for the purposes of the Motion to Dismiss."[15] ECF No. 24, at 7.

Relyant's arguments fail for three reasons. First, the statute of limitations requires allegations that actual labor was performed or actual material was supplied in the last year, not allegations about what could hypothetically happen in the future. *See, e.g.*, *Highland Renovation Corp. v. Hanover Ins. Grp.*, 620 F.Supp.2d 79, 83 (D.D.C. 2009) ("A plaintiff cannot survive a timeliness challenge without specific evidence of original contract work being performed within the one-year limit."); *see also Sun Eng'g Enters., Inc.*, 817 F.Supp. 1016 (noting that even in the case of a contractual omission by a subcontractor, the subcontractor would still need to perform in order to toll the statute of limitations). Next, the Subcontract does not automatically guarantee that Relyant will have to revise its after-action reports. Rather, the Subcontract states that Relyant's "Work is subject to the approval and acceptance" of the Government and that if "any part of the Work is determined [by the Government] or [GOJV] to be improper, defective or otherwise fails to conform to the Subcontract Documents … Subcontractor shall" remedy the issue. *Id.* at 16, 26 (discussing Relyant's duty to correct). Thus, the provisions of the Subcontract

---

[14] "[T]he date of final inspection or approval has no necessary legal relationship to the date of final performance." *See Sun Eng'g Enters., Inc.*, 817 F.Supp. 1017.

[15] Relyant also argues that the Miller Act Defendants should not be allowed "to contradict these allegations by improperly introducing matters outside the pleadings, including a settlement agreement between GOJV and the Government." ECF No. 24, at 7. For the purpose of this motion to dismiss, the court disregards the Miller Act Defendants' arguments that rely on the veracity of the settlement agreement because the settlement agreement was not included in the Plaintiff's original pleadings. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

do not guarantee that Relyant will have to make corrections to the after-action reports. *See generally id.* at 16-46; *see also Int'l Fid.*, 200 F.3d at 461 (stating that it would be against the Miller "Act's language and underlying policy" to allow a warranty clause to perpetually toll the statute of limitations for "perhaps many years after the project's completion"). Lastly, Relyant's bare assertions, as relayed above, that it met the requirements of the statute of limitations are not owed an assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (stating that "bare assertions" of the elements of a claim which were "conclusory" were "not entitled to be assumed true"). Accordingly, the statute of limitations bars Relyant's Miller Act claim because Relyant did not allege any actual labor performed or materials supplied between July 18, 2024 and July 18, 2025.

2. **Revisions of the After-Action Reports would have been Correction-Or-Repair Labor and Materials which Do Not Toll the Statute of Limitations**

Revisions to the after-action reports would have been correction-or-repair materials, and thus, would not have tolled the statute of limitations. In the Ninth Circuit, courts analyze whether the "work was performed and the material supplied as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project" to determine when the statute of limitations starts running. *W. Elec.*, 337 F.2d at 572-73 (internal quotation marks omitted). Correction-or-repair labor and materials do not toll the statute of limitations. *See id.* Several courts have held that work performed pursuant to a warranty is corrective in nature. *See, e.g.*, *T & A Painting, Inc. v. U.S.*, 673 F.Supp. 994, 996 (N.D. Cal. 1987) ("Warranty work, however, is repair work."); *U.S. ex rel. Automatic Elevator Co., Inc.*, 912 F.Supp. at 401 ("It therefore holds that [subcontractor's] work in the performance of its warranty obligation did not re-trigger the commencement of the [Miller] Act's one-year limitations period.").

The Subcontract attached to Relyant's First Amended Complaint lists the "**WORK TO**

**BE PERFORMED**" for the original contract in "**ATTACHMENT A.1**." ECF No. 9, at 31. The list mandates that Relyant write two after-action reports, among other tasks. *See id.* Relyant stated in its First Amended Complaint that "[m]ost of [its] scope of work on the Project is now complete, but additional work, including completion of after-action reports are part of Relyant's Scope of work under its Subcontract." *Id.* at 5. It added that it "submitted its after-action reports to GOJV" but alleged that the Government would require it "to make revisions to the after-action reports before they are accepted." *Id.* at 6. Aside from possible revisions to the after-action reports that Relyant warranted in the subcontract, Relyant did not specifically state any other outstanding tasks to be performed. *See id.* at 16 ("Subcontractor warrants to [GOJV] and [the Government] that all Work shall be performed in a neat, skillful, good and workmanlike manner[.]"); *see also id.* at 9 ("Relyant performed all the work that it was contracted to perform[.]").

The First Amended Complaint demonstrates that "Relyant performed all the work that it was contracted to perform" under the Subcontract. *Id.* at 9. It is further evident that any revisions to the after-action reports would be corrections of the two after-action reports originally required by the Subcontract based on the workmanship that Relyant warranted in the agreement. *Id.* at 16, 26, 31. Analyzing the Subcontract that Relyant attached to its First Amended Complaint, and Relyant's admission that the work had been performed more than one year before the Miller Act claim was filed, any future revisions of the after-action reports would be corrective and, accordingly, not toll the statute of limitations. Relyant has provided no other possible allegations or evidence of work that could have tolled the statute of limitations in the year preceding its complaint. Therefore, the statute of limitations imposed by the Miller Act bars Relyant's Miller Act claim in this case.

## V.    <u>CONCLUSION</u>

For the foregoing considerations, the court hereby GRANTS the Miller Act Defendants' Motion to Dismiss the Miller Act Claim brought pursuant to the Federal Rule of Civil Procedure 12(b)(6).

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Jun 16, 2026**